UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CR-00366 JAR |
| | ) | |
| ERIC DONABY, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. §  3582(c)(1)(A)(i)**

COMES NOW, the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Kenneth R. Tihen, Assistant United States Attorney for said District, and respectfully submits this response to Defendant's Motion for Compassionate Release requesting a reduction of his sentence. (Doc. 317). This Court should deny Defendant's motion because he fails to identify any "extraordinary and compelling reasons" that qualify for a reduced sentence under the statute, much less satisfy the separate requirement of showing that he is no longer a danger to community, and the mandatory sentencing factors in 18 USC § 3553(a) cut against early release.

**BACKGROUND**

On October 3, 2012, the Grand Jury returned a two-count indictment in cause number 4:12-CR-00366 JAR. Defendant was charged along with five other defendants in Count 1 with conspiracy to distribute and possess with the intent to distribute heroin in violation of Title 21 U.S.C. § 841(a)(1) and § 846. On November 7, 2012, Defendant was ordered to be detained after he waived his right to a hearing. (Doc. 69).   On February 28, 2012, Defendant entered a guilty plea to Count 1. (Doc. 130). Defendant's conviction was based on evidence which involved a

1

conspiracy to possess and distribute heroin. This conspiracy involved codefendant Eric Lucas obtaining bulk quantities of heroin from Tony Fortson. (Doc. 225, ¶ 16). After Lucas obtained bulk quantities of heroin, it would be distributed to others at a profit. (Doc. 225, ¶ 18). During the conspiracy, heroin was distributed in the St. Louis, Missouri, and East St. Louis, Illinois, areas. (Doc. 225, ¶ 22).

Investigators intercepted wiretap conversations between Eric Lucas and Defendant.  (Doc. 225, ¶ 21). On one occasion, Defendant informed Lucas that he was waiting on several people to arrive with money they owed for heroin previously provided. Defendant intended to give the money he received to Eric Lucas as payment for heroin provided. Investigators determined that two individuals had traveled from Columbia, Missouri to Donaby's home at 8237 St. Phillips Drive, East St. Louis, Illinois to pay the money.  Wire intercepts confirmed that the payment was made.  Investigators learned that these two individuals had been obtaining heroin from Defendant over a five month period.  These two individuals obtained multiple amounts of heroin from Defendant approximately every week or two during this time frame.  Defendant also supplied other persons with heroin obtained from Eric Lucas during this conspiracy. (Doc. 225, ¶ 21).

The wire intercepts also revealed that on another occasion Eric Lucas was preparing to meet and sell heroin to Defendant, at Defendant's residence, located in East St. Louis, Illinois. (Doc. 225, ¶ 23). Surveillance observed Eric Lucas travel to Defendant's residence where he distributed heroin to Defendant.  Investigators learned that Lucas sold Defendant heroin each week for approximately one year. Defendant would then redistribute the heroin to others. (Doc. 225, ¶ 23).

For sentencing, Defendant's Total Offense Level was a 29, which included an acceptance of responsibility reduction, and his Criminal History Category was VI. This resulted in a

sentencing guideline range of 151-188 months and this Court sentenced Defendant to 120 months—granting a downward variance—with credit for 12 months on July 16, 2013. (Doc. 272). In 2015, Defendant moved for a sentence reduction pursuant to Amendment 782. (Doc. 267). However, after determining that Defendant was not eligible for such a reduction, his motion was denied. (Doc. 274). Defendant is presently serving his sentence at Federal Correctional Institution (FCI) Englewood located in Colorado with a projected release date of October 21, 2021. (Doc. 325).

**Additional Relevant Prior Criminal Conduct**

Defendant has lengthy criminal history, which includes prior convictions in federal and state courts. In November 1990, the Defendant was sentenced after pleading guilty to unlawful possession of Cocaine. (Doc. 225, ¶ 54). In March 1990, the Defendant was convicted of unlawful possession of Cannabis. (Doc. 225, ¶ 55). In August 1990, the Defendant convicted of resisting/obstructing a police officer. (Doc. 225, ¶ 56). In October 1993, the Defendant was sentenced after pleading guilty to possessing with the intent to deliver cocaine. Defendant was placed on probation for five years.  (Doc. 225, ¶ 57). Defendant's probation was revoked and he was sentenced to 5 years custody.

In July 1995, the Defendant was convicted of unlawful possession of Cannabis after Defendant was stopped by police and found to be in possession of marijuana and a loaded .38 caliber pistol. (Doc. 225, ¶ 58). Then again, in November 1995, Defendant was convicted of conspiracy to distribute cocaine base in the U.S. District Court for the Southern District of Illinois. (Doc. 225, ¶ 59).  Defendant was sentenced to 135 months imprisonment. In June 1997, the sentence was reduced to 90 months. During his term of supervised release, Defendant was cited for multiple violations, including but not limited to using marijuana and cocaine. Defendant's term

3

of supervised release was eventually revoked and he was sentenced to an additional 13 months of imprisonment. (Doc. 225, ¶ 59). Then again, in July 2010, Defendant was sentenced after pleading guilty to unlawful possession with intent to deliver a heroin. According to court records, this offense was related to the charges before this Court. (Doc. 225, ¶ 61). In March 2011, Defendant was convicted of unlawful possession of cannabis. (Doc. 225, ¶ 61). In July 2012, Defendant was convicted of unlawful possession of heroin. (Doc. 225, ¶ 62).

In addition to a lengthy criminal record, Defendant has also been cited several times while being incarcerated. Defendant was sanctioned on December 9, 2017, March 16, 2016, and March 4, 1998 for possessing an unauthorized cellphone, possessing intoxicants (alcohol), escape, and using marijuana.

Defendant is now 50 years old. The U.S. Probation Office's Presentence Investigation Report notes that Defendant has been diagnosed with morbid obesity, hypertension, sleep apnea, and other illnesses. (Doc. 325). This matter is now before the Court on Defendant's motion for compassionate release, wherein Defendant argues the he should be given home confinement for the remainder of his term of imprisonment and placed on supervised release. To support this request, Defendant asserts he received a more severe sentence than another defendants in this case and that he is obese and has high cholesterol, hypertension, joint disorder and sleep apnea. (Doc. 317, pp. 4-6).

Defendant, through his counsel, purports making a written request for compassionate release/reduction in sentence to the Warden of FCI Englewood on June 4, 2020.  On July 27, 2020, BOP informed this office that Defendant's request was denied. For this reason, the United States is not arguing Defendant failed to exhaust his administrative remedies with BOP before filing the present motion. However, Defendant's request should be denied for the reasons detailed below.

**ARGUMENT**

As this Court recently instructed in denying a request for early release based on COVID-19: "The law is clear: absent statutory authority, the Court cannot reduce a final sentence." *United States v. Adem*, No. 4:19-cr-00676-AGF, slip op. at 1 (Mar. 19, 2020) (ECF No. 242) (rejecting an unopposed request for early release of just six days in light of the coronavirus pandemic); *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (quoting 28 U.S.C. § 3582(b)). Here, Defendant seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act.

"In December 2018, as part of the First Step Act, Congress worked a change to the rule of long standing that a court could only modify a sentence upon motion from the Bureau of Prisons." *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (quotation and brackets omitted). To allow prisoners to petition courts directly for compassionate release while still giving BOP the first opportunity to evaluate such requests, Congress amended section 3582(c) to include the following language:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A)  the court, upon motion of the Director of the Bureau of Prisons*, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (i)  extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c) (emphasis added). Thus, a defendant may now move the sentencing court for a reduced sentence but only "after (1) fully exhausting his administrative remedies, or (2) a lapse of 30 days from the warden's receipt of the defendant's request." *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020).

While the First Step Act changed *who* could file a motion for compassionate release, it did not alter the requirements for granting relief. *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("Congress in fact only expanded access to the courts; it did not change the standard."). Under the unmodified language in section 3582(c)(1)(A)(i), a sentencing court may reduce a term of imprisonment only for "extraordinary and compelling reasons." This phrase, in turn, is defined by the Sentence Commission's binding policy statement in section 1B1.13 of the Guidelines Manual. *See United States v. Korn*, No. 11-CR-384S, 2020 WL 1808213, at *3 (W.D.N.Y. Apr. 9, 2020) ("Congress delegated to the Sentencing Commission the task of [defining this phrase]."). Significantly, section 1B1.13 "limits the universe of extraordinary and compelling reasons to five categories": (A)(i) terminal illness, (A)(ii) debilitating medical conditions, (B) advanced age, (C) death or incapacitation of certain family members, and (D) other extraordinary and compelling reasons determined by BOP. *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 13, 2019) (citing U.S.S.G. § 1B1.13 cmt. n.1). Additionally, before granting early release, the court must verify that the "defendant is not a danger to the safety of any other person or to the community" and consider whether a lesser sentence is appropriate under the section 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

Applying this framework to the present case, this Court should deny Defendant's request because he does not qualify for a reduced sentence under the First Step Act – to wit: Defendant does not have any extraordinary or compelling circumstances that warrant release, and Defendant

has failed to demonstrate that he is no longer a danger to the community, which the United States still believes he poses.

## I.   Defendant does not qualify for early release under section 3582(c)(1).

Defendant has not met the high bar of showing that he is entitled to an early release under section 3582(c)(1)(A). See *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019) ("It is the Petitioner's burden to prove a sentencing reduction is warranted [on a motion for compassionate release].") (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)). First, while COVID-19 has impacted the lives of all Americans, Defendant has not identified an "extraordinary and compelling" reason that "warrant[s]" a reduction in sentence under section 1B1.13. Second, and equally problematic, Defendant still poses a danger to the community, and the factors in 18 U.S.C. § 3553(a) weigh strongly against early release. As such, Defendant's motion requesting compassionate release must be denied.

### a.   Defendant has not identified any "extraordinary and compelling reasons" that qualify under the Sentencing Commission's binding definition in section 1B1.13.

First, Defendant fails to identify any circumstances that can justify release. To qualify for early release, a defendant must demonstrate that at least one of the "extraordinary and compelling reasons" identified in section 1B1.13 of the Sentencing Guidelines warrants a reduced sentence in his or her particular case. See, e.g., *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3082202, at *1 (S.D. Ala. July 15, 2019) ("The Commission's policy statement thus establishes the boundaries of what may and may not be judicially determined to be extraordinary and compelling reasons for a sentence reduction."). "[B]ecause [Defendant's] grounds for relief do not accord with any of these categories, he cannot successfully obtain a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)." *United States v. Brummett*, No. 6:07-103-DCR, 2020 WL 1492763, at *3 (E.D. Ky. Mar. 27, 2020).

Application Note 1 of section 1B1.13 provides a defined universe of extraordinary and compelling reasons that qualify a defendant to be considered for early release. First, this standard is met if a defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, certain debilitating medical conditions qualify, provided that the defendant is:

> (I) a suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). However, as this Court observed just last year, "a compassionate release due to a medical condition is an extraordinary and rare event." *White*, 378 F. Supp. 3d at 787. Section 1B1.13 also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)–(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." *Id*. at cmt. n.1(D).

Defendant does not meet the Sentencing Guideline's definition for "extraordinary and compelling reasons" under § 1B1.13(A)(i) because his diagnoses of morbid obesity, hypertension, sleep apnea, and other illnesses are not terminal. Nor does Defendant meet the guideline's definition under § 1B1.13 (A)(ii) because not any of Defendant's conditions are debilitating and do not prevent Defendant from providing self-care within the correctional facility. Furthermore, Defendant does not fit the criteria under § 1B1.13(B) because he is not 65 years old. As pointed out by the U.S. Probation Office's Compassionate Release Report, Defendant is able to

"participate in programming and other daily activities without distress" and is able to "manage his medical conditions" at his particular facility. (Doc. 325).

Here, Defendant first argues that he should be granted a reduced sentence in order to avoid a sentencing disparity because Defendant is receiving a sentence greater than the most culpable person in the instant offense. (Doc. 317). Next, Defendant argues that he should be granted a sentence reduction because this Court erred in applying the Career Offender enhancement in his case. After making these two points, Defendant then argues he should be granted compassionate release because of his many illnesses, which is the only actual point relevant to the matter before this Court.

As to the alleged sentencing disparity, the other defendant to which Defendant refers is Tony Fortson. Fortson received a 144 month term of imprisonment, which was reduced to 120 months pursuant to Sentencing Amendment 782. (Doc. 261). Defendant argues that Fortson, the lead defendant in this charged conspiracy, projected release date is before his and has resulted in a sentencing disparity. However, this argument fatally fails to consider both the Defendant and Fortson's criminal histories, which is relevant to how each were sentenced. While Defendant was deemed a Career Offender with a criminal history category of VI, Fortson had a criminal history category of III. Additionally, the court already took into account the sentencing disparity argument when the court varied downward in defendant's sentencing range which was 151-188 months to 108 months imprisonment. (Doc. 228).

As to Defendant's next point about the error in applying the Career Offender sentencing enhancement, this argument is also inconsistent with the law. As discussed earlier, Defendant has a lengthy and extensive criminal history, which includes multiple felonies for drug related offenses prior to the instant offense. Therefore, Defendant was correctly eligible for the Career Offender

9

enhancement at sentencing. This was reconfirmed after the U.S. Probation Office's Presentence Investigation Report a second time in their Amendment 782 report, which also applied the Career Offender enhancement. (Doc. 272). While Defendant leads with these two points, it should be noted that neither Defendant's argument regarding sentencing disparity or application of the Career Offender sentencing enhancement are relevant to the question of whether compassionate release is warranted in Defendant's case.

Finally, Defendant asserts that his hypertension, severe obesity, enlarged prostate, high cholesterol, joint disorder, and sleep apnea (the latter of which requires a CPAP machine) are "extraordinary and compelling reasons" that justify his release. ). A review of Defendant's medical records indicates that his high cholesterol, hypertension, enlarged prostrate, high cholesterol and joint disorder are treated and controlled with medication. These records also confirm that there is a "plan of care" in place. More importantly, Defendant's alleged conditions do not meet the guideline definition. They are not terminal; he is only 50 years of age, and his condition has not deteriorated. It is true that some individuals who are obese and have hypertension are more likely to become severely ill if they contract the virus. *See* Centers for Disease Control, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. However, Defendant advances just only the *possibility* that he will become infected with COVID-19 is grounds for erasing the remainder of his sentence. Although Defendant has established that he is obese, has hypertension, and other ailments, his speculative concern about contracting COVID-19 cannot justify compassionate release. Furthermore, as stated in the Probation Office's Compassionate Release Report, Defendant has been able to successfully manage his medical conditions with the help of BOP's medical staff. (Doc. 325).

Further, several courts have denied compassionate release motions for defendants suffering from obesity. *See United States v. Fry*, 2020 WL 1923218 (D. Minn. Apr. 21, 2020) (denied for 66-year-old man who is obese and has heart disease and high blood pressure; "To merit such compassionate release, Fry must show more than a mere speculation of the possibility of contracting the virus."); *United States v. Council*, 2020 WL 3097461 (N.D. Ind. June 11, 2020) (Elkton inmate presents sleep apnea, asthma, hypothyroidism, and obesity, none of which rise to the level of a risk factor); *United States v. Pass*, 2020 WL 2332001 (E.D. Pa. May 11, 2020) (inmate suffers from diabetes and obesity, and his mail fraud was nonviolent, but his drug abuse makes him a danger to the community, and he does not show he would be safer at home). Moreover, courts have also denied compassionate release motions for individuals with hypertension. *See United States v. Broomfield*, 2020 WL 2200432 (C.D. Ill. May 6, 2020) (denying release where 29-year-old defendant with controlled hypertension had five months remaining on his 36-month sentence and there was no outbreak at his facility); *United States v. Mazur*, 2020 WL 2113613 (E.D. La. May 4, 2020) (denying release where defendant had myeloid leukemia and hypertension and was housed at a facility with an outbreak because given BOP's efforts to address the issues, there was no extraordinary and compelling basis for relief); *United States v. Shah*, 2020 WL 1934930 (E.D. Mich. Apr. 22, 2020) (denying relief where defendant suffered from diabetes and hypertension, but there were no COVID-19 cases at his facility where BOP was making strong efforts to combat transmission of the virus). Lastly, courts have also denied defendant's request for compassionate release due to sleep apnea requiring use of a CPAP machine. *See United States v. Rahman,* 2020 WL 3286900, at *2 (E.D. Mich. June 18, 2020) ("even if Rahman's use of a CPAP machine increases his likelihood of contracting COVID-19, Rahman has not offered any

evidence that his sleep apnea and use of a CPAP machine will result in the more severe symptoms of COVID-19.").

Defendant also mentions the conditions at FCI Englewood and the county where it is located as justification for his immediate release. Specifically, Defendant claims that FCI Englewood has had one infected staff member and the county has reported 2,516 infected and 201 deaths. While facility-specific considerations do not factor into the "extraordinary and compelling" analysis under section 1B1.13, Defendant still fails to show why his detention at FCI Englewood will expose him to significant health risks. In this regard, it is important to highlight the extraordinary efforts that BOP has undertaken to mitigate the risk of a COVID-19 outbreak at its facilities. BOP has been preparing for a potential coronavirus outbreak since January 2020. *See* Fed. Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan,* https://www.bop.gov/resources/news/20200313_covid-19.jsp (Mar. 13, 2020). Effective March 13, BOP implemented Phase Two of its COVID-19 Action Plan, which required all facilities to "to mitigate the spread of the COVID-19" with proactive measures that included: (1) prohibiting all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers (with allowances for medical treatment); (4) requiring staff health screening; (5) adopting a variety of coronavirus-specific protocols for inmates, such as screening new inmates and isolating and testing inmates with risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.* Since then, BOP has continued to refine its efforts with regular updates. *See* Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Five,* https://www.bop.gov/resources/news/20200331_covid19_ action_plan_5.jsp (Mar. 31, 2020). For example, Phases Four through Six include new measures, like quarantining all incoming inmates for at least fourteen days and securing inmates in their quarters to decrease

the potential for transmission. *Id.*; Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Six*, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (Apr. 14, 2020).

As a result of these proactive steps, BOP has done a remarkable job of trying to keep its facilities virus free and of limiting transmission to a small fraction of inmates when positive cases do occur. This explains why FCI Englewood has been able to minimize the spread of COVID-19 within its facility and why there is currently only ONE positive inmate out of 1,016 total inmates and ZERO positive staff members. *See* https://www.bop.gov/coronavirus/. Further, there is no evidence indicating that FCI Englewood has failed to "provide requested medical attention to Defendant" for his conditions or will be unable to care for Defendant were he to contract COVID-19. *See United States v. Seymon*, 11-CR-10040-JES, 2020 WL 2468762, at *4 (C.D. Ill. May 13, 2020). Thus, Defendant has failed to meet his burden of showing that facility-specific considerations qualify as an "extraordinary or compelling reason" that would make release appropriate here. *See Gileno*, 2020 WL 1307108, at *4 (noting that, without particularized evidence of inadequate care, "the Court cannot assume that [BOP] will be unable to manage the outbreak or adequately treat [the defendant]").

In sum, while Defendant's concerns about COVID-19 are understandable, they simply do not qualify him for compassionate release under section 3582(c)(1).

### b. Defendant still poses a significant danger to the community, and the 3553(a) factors weigh strongly against release.

Alternatively, the request for a sentence reduction should be denied because Defendant has failed to demonstrate that he no longer poses a danger to the community or that he otherwise merits release under the § 3553(a) factors. "In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a)." *Gileno*, 2020 WL

13

1307108, at *1; *see also* 18 U.S.C. § 3582(c)(1)(A) (directing courts to consider these factors for every request for early release). Additionally, "a reduction in sentence under [the First Step Act] requires a determination that '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (quoting U.S.S.G. § 1B1.13(2)). A defendant's failure to show that *both* section 3142(g) *and* section 3553(a) favor a reduced sentence is fatal to such a request. *See Brummett*, 2020 WL 1492763, at *3–4 (concluding that the danger defendant posed to the community and the section 3553(a) factors each provided an independent basis for denying a request for compassionate release).

Here, Defendant's motion for compassionate release claims the factors in section 3553(a) favor a reduced sentence because Defendant's has made positive changes while in BOP custody. These changes include completing Drug Education Program training in 2018, Non-residential Drug Abuse Program training in 2019, and a Drug Abuse Education course this year. Additionally, Defendant reports that he is no longer a danger because he has completed courses that have provided him with job ready skills when he is released and has aged to become 50 years old, which decreased the likelihood that he will reoffend in the future. It should also be noted that this Court has received many letters of support from Defendant's relatives. This argument, however, does not accurately reflect the Defendant's circumstances nor does it accurately consider the section 3553(a) factors. While Defendant does appear to have the support of his family and has made some improvements while in BOP custody, these factors do not mitigate the seriousness of the offense to which the Defendant pleaded guilty. Defendant conspired with others to possess with intent to distribute more than one kilogram of heroin, which related activities spanned at least three states: Missouri, Illinois, and Michigan. (Doc. 225,

14

¶ 21-24). Further, Investigators learned that individuals involved in this conspiracy had been obtaining heroin from defendant over a five month period.  These individuals obtained multiple amounts of heroin from Defendant approximately every week or two during a lengthy time frame.  Defendant also supplied other persons with heroin he had obtained from Eric Lucas during the conspiracy. (Doc. 225, ¶ 21).

Furthermore, the need to promote respect for the law and provide just punishment, under Section 3553(a), also disfavors reducing Defendant's sentence. If Defendant were to be granted immediate release, his sentence would not reflect these objectives because reducing Defendant's sentence would detract from the seriousness of the offense. Additionally, § 3553(a)(2) emphasizes the importance for a sentence to afford adequate deterrence to future criminal conduct. This factor is especially important given Defendant's extensive criminal history record and continued inability to avoid getting into further trouble even while imprisoned. These aspects alone support the strong need for the Defendant's sentence to adequately deter him from future criminal acts.

Moreover, Defendant's motion for reduced sentence does not even suggest he no longer poses a danger to the community, which the United States believes he does. First, just the amount of drugs involved in the instant conspiracy demonstrates just how dangerous Defendant's actions are. Second, Defendant's criminal history reveals Defendant remains a danger to the community because of his propensity for drug criminality. Defendant prior convictions in federal and state court include convictions for possessing cocaine, heroin and marijuana (on one occasion defendant possessed a loaded pistol), and possessing and distributing heroin and crack cocaine. Defendant was also convicted of resisting/obstructing a police officer. During one period of release his term of supervised release defendant was revoked when he received multiple violations, including but not limited to using marijuana and cocaine. Defendant was sentenced to an addition 13 months of

15

custody. (Doc. 225, ¶ 59). Defendant's pattern of violating the law and other rules also extends to his time as an inmate. While incarcerated defendant has been sanctioned for possessing an unauthorized cellphone, possessing intoxicants (alcohol), escape, and using marijuana. Lastly, Defendant's release plan notes that he intends to return back to his residence at 8237 St. Phillips Drive in East St. Louis, IL, where Defendant resided when he committed the instant offenses. (Docs. 325). It should also be noted that Defendant also committed some of the drug activities at his East St. Louis Residence, which includes exchanging money for drugs. *Id*. Courts have been rightfully reluctant to grant compassionate release in cases where defendants have long criminal histories and have unacceptable release plans. *See United States v. Warren,* 2020 WL 3404691 (D. Idaho June 19, 2020) (although the defendant suffers from cancer, release is denied as he presents a danger based on his long criminal history, and the release plan is unacceptable: it calls for him to be released to a remote area far from the nearest probation office); *United States v. Kupa*, 2020 WL 2404856, at *2 (E.D.N.Y. May 12, 2020) (denied based on lengthy criminal record and disobedience of court orders; also, "To permit the defendant an early release to return to the place from which he operated his criminal scheme would disserve the factors in Section 3553(a)."). These factors— which are not affected by COVID-19—preclude a finding that Defendant is not a danger to the safety of any other person or the community. Defendant's criminal history and conduct while in prison support the denial of the instant motion.

In sum, the above considerations militate against a sentence reduction and outweigh Defendant's concerns related to COVID-19. Defendant's motion presents no new evidence that meaningfully shifts the balance of the § 3142(g) or § 3553(a) factors in Defendant's favor. *See Eberhart*, 2020 WL 1450745, at *2 (denying request for release because the "defendant fail[ed] to demonstrate that the § 3142(g) factors considered at the time detention was ordered, or the

16

§ 3553(a) factors considered by the court at the time of sentencing . . . have materially changed"). Accordingly, because Defendant has not met his burden of demonstrating that these considerations support release, his request for release must be denied on this basis.

II.     **The Court lacks jurisdiction to resentence the Defendant to home confinement, as BOP has "plenary control" over designation of inmates.**

Defendant also requests this Court to recommend him for home confinement for the remainder of his sentence in the alternative if his request for compassionate release is denied. However, this Court should also deny this request because it "has no authority to designate the place of confinement." *Eberhart*, 2020 WL 1450745, at *3. Instead, well-settled precedent recognizes that the BOP has complete authority to determine where an inmate is confined.

"While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (citation omitted). Indeed, as the Supreme Court has made clear, "the BOP has *plenary control* . . . over 'the place of the prisoner's imprisonment.'" after the court imposes its sentence. *Tapia v. United States*, 564 U.S. 319, 331 (2011) (citing 18 U.S.C. §§ 3621, 3624) (emphasis added). Furthermore, a number of courts have concluded that the COVID-19 pandemic does nothing to unsettle this long-standing rule. *See, e.g.*, *United States v. Oliver*, No. CR JKB-16-0485, 2020 WL 1505899, at *1 (D. Md. Mar. 30, 2020) ("[I]t is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement pursuant to 18 U.S.C. § 3624(c)."); *United States v. Williams*, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (same); *Garza*, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) ("[T]he Court lacks authority

to designate home confinement."). Thus, regardless of the Court's determination on compassionate release, the authority to determine Defendant's placement for the remainder of his sentence rests solely with the BOP. Any suggestion to the contrary must be rejected out of hand.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's motion, consistent with the overwhelming majority of courts that have considered requests for compassionate release in light of COVID-19 pandemic.[1]

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 /s/ Kenneth R. Tihen
KENNETH R. TIHEN, #37325MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200
Kenneth.tihen@usdoj.gov

---

[1] The Court should not grant a sentence modification absent a release plan that includes specific conditions for avoiding COVID-19. Additionally, the Government requests that any order granting release accommodate the need to quarantine a defendant for a period of at least fourteen days to protect public health. Specifically, the Court should retain jurisdiction over the motion for fourteen days if it makes a determination to grant release, while advising the parties of that decision. BOP will then place the inmate in quarantine. If the defendant has not displayed symptoms or tested positive for COVID-19 during that period, the Court may then order release. If the defendant does tests positive during the initial fourteen-day period, the Government will notify the Court and seek an extension of the release date until the defendant has tested negative.

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

 */s/ Kenneth R. Tihen*
KENNETH R. TIHEN, #37325MO
Assistant United States Attorney